Patrick Bernard HAZARD,
Plaintiff–Appellant,

v.

Myra June Tidwell HAZARD,
Defendant–Appellee.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 3, 1991.

Permission to Appeal Denied by
Supreme Court March 23, 1992.

Daniel D. Warlick, Nashville, for plaintiff-appellant.

Hal Gerber, Cynthia Arnold Wilson, Memphis, for defendant-appellee.

CRAWFORD, Judge.

This is a divorce case. The trial court sitting without a jury granted defendant and counter-plaintiff, Myra June Tidwell Hazard (hereinafter Wife), a divorce from plaintiff and counter-defendant, Patrick Bernard Hazard (hereinafter Husband) on the grounds of inappropriate marital conduct.

The parties were married April 26, 1980, after Husband, a medical doctor, had completed his residencies and was in his final year of fellowship training in pulmonary medicine. Wife held a bachelor of science degree in nursing as well as a certification by the University of Tennessee as a Pediatric Nurse Practitioner and was employed as a Registered Nurse. Husband was 31 years of age and Wife was 29 years of age. After completing the final year of his fellowship, Husband commenced a private practice known as Memphis Critical Care Association centered around his medical specialty of pulmonary medicine with emphasis on critical care patients. At the time of trial, Memphis Critical Care Association employed, in addition to Husband, one associate physician, two nurses, one transcriptionist and an office manager. The 1990 gross income of Memphis Critical Care Associates was approximately $600,-000 and Husband's 1990 personal gross income was approximately $200,000. Wife's income as a registered nurse at the time of trial was approximately $35,000 per year.

Wife introduced proof concerning Husband's insensitivity to her emotional needs. Her proof also showed that Husband indicated a disinterest in participating in family activities and spent an inordinate amount of time away from home. Apparently, a great deal of his time away from home was spent in his medical practice, but the proof indicated that he was not responsive when she attempted to reach him concerning various family matters. The record indicates that Husband spent little time participating with the family in group activities and had very little interaction with his children. Wife also testified of Husband's lack of interest during her two pregnancies and

the delivering of her children. She testified concerning derogatory remarks made to her by Husband concerning her appearance and their sex life. There was also proof introduced to support an inference that Husband had engaged in an extramarital affair.

Husband introduced proof that Wife was uncooperative and demanding and would not recognize his need to take care of his patients. Husband testified that Wife had falsely accused him of infecting her with sexually transmitted diseases and engaging in extramarital affairs. Proof was also introduced that Wife had engaged in an extramarital affair after the parties had separated.

The parties dispute the extent of Wife's participation in assisting Husband in the early years of his medical practice. Wife asserts that she acted as office manager and office nurse. She scheduled patient appointments, filed insurance, set up a billing system, did the bookkeeping and interviewed prospective employees. She testified that she worked on a regular basis in the early years while she was attending graduate school, but that in the latter years she worked only intermittently. Husband asserts that Wife's participation was primarily answering the telephone for the first few months and then later for a few years she helped with the books and with interviewing new employees.

Husband, in addition to his medical practice, had designed and developed a medical device known as a percutaneous tracheostomy kit, which in its present form was test marketed successfully for a period of time. At the time of trial, the device had been removed from the market for further research and development, after a patient had died while it was being used. The proof established that the device would have to be modified before it could be used again and that the future economic value of the device is not at present ascertainable.

Husband presented testimony valuing his medical practice in the amount of approximately $42,000, and Wife presented testimony valuing Husband's medical practice at approximately $600,000.

The final decree also provided, among other things, that Wife have custody of their two minor daughters, ages 9 and 6; Husband is required to pay child support in the sum of $1,200 per month per child, in addition to providing for medical insurance coverage and payment of all medical expense not covered by insurance; Husband is to receive the federal tax exemptions for the children; Wife is to receive alimony of $2,000.00 per month for sixty months in addition to alimony *in solido* in the amount of $12,000 for attorney fees and $4,500 for appraisal expenses. The decree also made a division of marital property which included an award to Wife of $100,000 as her interest in Husband's medical practice and an award to Wife of a 20 percent interest in the proceeds received by Husband from royalties, licenses and sales of the percutaneous tracheostomy kit.

■ Husband has appealed and has presented five issues for review, and Wife has presented four issues for review. Husband's first issue for review is whether the trial court erred in awarding the divorce to Wife on the grounds of inappropriate marital conduct.

The trial court found that both parties were guilty of acts that constitute grounds for divorce, but that Wife's acts did not affect the marital relationship as did Husband's. See T.C.A. § 36–4–129(b) (Supp. 1990).

■ Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

From our examination of the entire record, we conclude that the evidence does not preponderate against the finding of the chancellor on this issue.

■ Husband's second issue for review is whether the trial court erred in allowing into evidence, over Husband's objection, a

copy of a letter from Husband to his former attorney.

The letter in question was stored in the Husband's computer located in the marital home, to which Wife had complete access when she retrieved the letter from the computer. In *Smith County Educ. Ass'n v. Anderson*, 676 S.W.2d 328 (Tenn.1984), the Court said:

> The attorney-client evidentiary privilege only extends to communications from the client to the attorney. D. Paine, *Tennessee Law of Evidence*, § 96, p. 111–112 (1974), and confidentiality is destroyed when those communications take place in the presence of a third party. *Hazlett v. Bryant*, 192 Tenn. 251, 257, 241 S.W.2d 121, 123 (1951). The privilege is designed to protect the client and because it belongs to the client, may be waived by him....

676 S.W.2d at 333.

Husband voluntarily placed this communication in the computer to which Wife had access. This effectively allowed the contents of the letter to be communicated to Wife the same as if Wife had overheard a conversation of Husband with his attorney or had received a copy of a letter from Husband to his attorney. There is not a situation concerning testimony from the attorney to whom the letter was addressed and the communication as introduced was not privileged.

■ The next issue for review, presented by both parties, is whether the trial court erred in its valuation of Husband's medical practice as marital property for division.

The trial court found that Husband's medical practice was marital property with a value of $200,000 and awarded each party $100,000 as a division thereof.

Husband contends that the valuation should have been $42,818 as established by the testimony of his expert witness. Wife contends that the valuation should have been $600,000 as established by the testimony of her expert witness.

Husband's expert witness, Paul King, had been involved in the sale of medical practices, and was generally familiar with the conduct of the private practice of medicine from a business perspective. He had valued medical practices similar to Husband's in the past. His valuation of $42,818 was based upon the value of the accounts receivable, cash on hand, equipment, fixtures, office equipment and supplies and the active and inactive medical charts. He included nothing in his valuation for good will.

Mickey Ison, Wife's expert witness, is a CPA who had participated in business evaluations for some years. He characterized Husband's medical practice as a personal service business and testified that the purchaser of such a personal service business is most concerned with annual gross revenues. He testified that he is familiar with a medical practice in Memphis that had sold for 1.3 times the annual gross revenues. He further testified that the gross multiplier is commonly used in business valuation and is a recognized method for valuing medical practices by the American Medical Association. He admitted that part of his valuation of Husband's medical practice includes good will, but asserts that the value of the practice would not change even if there was no good will involved. Mr. Ison contends that purchasers of personal services businesses are concerned primarily with gross receipts and not hard assets. He also testified that good will is insignificant to such a purchaser.

Mr. Ison further testified that he reached a conclusion as to the value of the medical practice based upon the fair market approach, the value of asset approach and the capitalization of income approach, all proper methods for establishing the value of closely held corporations. *Blasingame v. American Materials, Inc.*, 654 S.W.2d 659 (Tenn.1983). Using these guidelines, he reached a value of $629,000 for Husband's practice.

From reviewing the record we have concluded that there is no proof to support the trial court's finding that the value of Husband's medical practice is $200,000. To the contrary, we find that the value of the medical practice is $42,818, as established

by the testimony of Husband's expert witness.

■ An interest in a profession, such as a law practice or medical practice, may be considered a marital asset, *Batson v. Batson*, 769 S.W.2d 849 (Tenn.App.1988), and the parties hereto do not question that the trial court correctly found that Husband's medical practice is marital property. In *Smith v. Smith*, 709 S.W.2d 588 (Tenn. App.1985), the Middle Section of this Court, in dealing with a law practice as a marital asset, said:

> The next question is what elements of a profession are taken into account in arriving at the value of that profession for purposes of making an equitable division. The physical assets, of course, such as the furniture, buildings, library, etc., are things that have an ascertainable value and should be taken into account. The accounts receivable, properly weighted, should have a definite value. The most troublesome question involves the good will of the firm. Is that an asset that can be considered part of the marital property? Other states are split on the question, although a clear majority hold that the good will of the firm should be considered and evaluated in making a division of the marital property. *See* Annot. 52 A.L.R.3d 1344.
>
> We are not persuaded, however, that this state should adopt the rule that professional good will is a part of the marital estate. We find the position taken by the Wisconsin Court of Appeals in *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (App.1981) to be persuasive. The court said:
>
>> The concept of professional good will evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its good will consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged by the individual owners. The good will or reputation of such a business accrues to the benefit of the owners only through increased salary.
>>
>> * * * * * *
>>
>> There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value.
>
> 309 N.W.2d at 354–55.
>
> Thus, the professional good will is not a marital asset which would be accounted for in making an equitable distribution of the marital estate.

709 S.W.2d at 591–592.

Although Wife's expert testified that he was not considering the future income stream of the medical practice to determine the present day value, it appears to the Court that using the gross income approach to determine the value of the medical practice does of necessity take into consideration an expectation that the income will hold true for the future. In *Argo v. Argo*, (Tenn.Ct.App., W.S. 4/11/85), the Court considered the valuation of a dental practice and reached the conclusion that the trial court correctly found that the assets comprising the dental practice consisted of the cash on hand, accounts receivable and equipment. The Court noted the personal nature of a professional practice and the speculative nature of future income. In the instant case, it is clear from the record that Husband's medical practice is highly specialized and depends primarily on referrals from other physicians. To use the gross income approach to determine the value of his medical practice would in effect be placing a value on the future performance of the practice. Such future performance is dependent on many factors which may or may not materialize and a valuation based on present income is highly speculative.

■ Wife also asserts that Husband's medical practice under the name of Memphis Critical Care Association is a separate entity and should be valued as a separate entity. We respectfully disagree and find nothing in the record to indicate a separate entity status for the medical practice.

■ Husband's next issue presented for review is whether the trial court erred in awarding Wife twenty percent interest from the sale of the percutaneous tracheostomy kit designed and refined by Husband.

The proof established that the device in question had been test marketed but because of an unfortunate experience was withdrawn from the market for further refinement. The device in its present state has no marketable value, but has intrinsic value for its present stage of development. The proof established that if it should have a marketable value it will be because of adjustments or refinements made in the device itself. This is distinguishable from someone starting from scratch to design, develop and refine such a device. In its present state the device is in the nature of an intangible asset which was properly valued at the time of trial as a contingent asset. At its present stage of development, the device admittedly has some intrinsic value and, although a monetary value cannot be placed thereon, the property interest should be considered marital property subject to division. Under the circumstances, the trial court used an equitable method of making a division of this particular asset.

■ Both parties present as the next issue for review whether the trial court erred in awarding Wife $2,000 per month for sixty months as rehabilitative alimony.

Husband contends that Wife should not have been awarded as much as $2,000 per month and Wife contends that she should have been awarded much more than $2,000 per month.

T.C.A. § 36–5–101(d) (1991) provides in part:

... In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age, and physical and mental condition of each party;

(5) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(6) The separate assets of each party, both real and personal, tangible and intangible;

(7) The provisions made with regard to the marital property as defined in § 36–4–121;

(8) The standard of living of the parties established during the marriage;

(9) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(10) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(11) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The record discloses that there is a large disparity in the income of the parties. Husband's gross income in 1990 was approximately $200,000 and Wife's was approximately $35,000. Because of the education and training of Husband, his earning

capacity will in all probability remain much larger than Wife's. Wife is seeking to obtain her master's degree, which will somewhat enhance her earning potential.

The marriage lasted approximately 10 years, and Wife participated fully in caring for the family and maintaining a home. She also helped in the establishment of Husband's medical practice. The parties appear to have very little separate assets aside from those obtained by the division of marital property. Because of our decision concerning the valuation of the medical practice, the Wife's share of the marital estate will amount to approximately $118,000 which is about 51% thereof.

■ The record reflects that Wife has approximately $2,030 monthly net income from her employment and pursuant to the order of the court is receiving $2,400 per month child support. She testified that she and the children need approximately $10,785 per month, but included in that figure was a house note of $5,400 which is no longer due since the house has been sold. This would reduce their needs to $5,385.00 per month plus an amount sufficient to provide housing. The parties stipulated that the marital residence has been sold and that each of them obtained approximately $34,000 as their respective shares of the equity. However, there is no stipulation concerning the cost of providing housing for Wife and the children, nor is there anything in the record to indicate the other expenses that would be required for the new residence. The needs of the spouse to whom spousal support is awarded and the ability of the other spouse to pay are the dominant factors to consider in making an award of spousal support. See *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn.App. 1984); *Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn.App.1981). In this case, the record is incomplete concerning the needs of Wife. Therefore, pursuant to T.C.A. § 27–3–128 (1980) the case should be remanded to the trial court for further proceedings to ascertain the proper amount of spousal support to be awarded, and the present award shall remain in effect pending further orders of the trial court.

■ The next issue to be considered by the Court as presented by both parties is whether the trial court erred in ordering Husband to pay $12,000 as part of Wife's attorney fees and $4,500 for expert witness expense.

Husband contends that he should not have been required to pay any amount for attorney fees and witness expenses, and Wife contends that Husband should have paid the entire amount of the attorney fees, which were approximately $18,000.

In the property division, Wife will receive approximately $118,000 and has only an earning capacity at present of about $35,000 per year. Husband, on the other hand, earns over $200,000 per year and has the educational background and training to increase his earnings considerably in the future. A large part of the marital estate awarded to Wife consisted of the furnishings of their home, and there were very few assets readily convertible to cash. Wife should not be required to spend the assets that could help as a future source of income in order to pay attorney fees. See *Batson v. Batson*, 769 S.W.2d 849 (Tenn. App.1988). From the record, it appears that Wife does not have adequate resources to pay her attorney fees and the trial court should have ordered Husband to pay the entire fee of approximately $18,000. Likewise, the record reflects that the trial court was correct in requiring Husband to pay the expert witness fee.

■ The next issue presented for review by Wife is whether the trial court erred in awarding only $2,400 per month as child support for the two children, which is not in conformance with the child support guidelines.

T.C.A. § 36–5–101(e) (1991) provides in pertinent part:

(e)(1) In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a *rebuttable presumption* the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a

written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.

(2) Beginning October 13, 1989, the child support guidelines promulgated by the department pursuant to the rulemaking provisions of the Uniform Administrative Procedures Act, compiled in title 4, chapter 5, shall be the guidelines that courts shall apply as a *rebuttable presumption* in child support cases.... (Emphasis supplied).

The guidelines established by the rules provide that "the child support award is based on a flat percentage of net income (as defined in paragraph 4 below) of the obligor depending on the number of children to be supported." Tenn.Comp.R. & Reg., Child Support Guidelines, 1240–2–4–.03(2). For two children, the guidelines provide for 32 percent of such net income. 1240–2–4–.03(5).

Wife argues that based on Husband's gross income for 1990 in the amount of $200,000 to $210,000, pursuant to the Guidelines the child support should have been set by the trial court at $3,217.00 for the two children. Wife fails to consider, however, that the rules specifically provide that the child support guidelines are inappropriate where the net income of the parent paying the support is in excess of $6,250 per month. Tenn.Comp.R. & Reg., Child Support Guidelines, § 1249–2–4–.02(5) and 1240–2–4–.04(2)(a) (1989). It is undisputed in the instant case that Husband's net income as calculated under the rules exceeds $6,250 per month. Under these circumstances, we must determine to what extent, if any, the guidelines should be used for determining child support payments when the obligor's net income exceeds $6,250.00 per month. This precise question was before this Court in *Nash v. Mulle*, No. 01–A–01–9103–JV–0096, 1991 WL 228992 (Tenn.App., W.S., Nov. 8, 1991) in which the Court said:

It would seem unreasonable and unjust to rule that the guidelines have no use-fulness in the determination of just child support if the obligor has a monthly income of $6,250.01, but are presumptively controlling if the income is $6,250.00 per month, a difference of one cent.

*Nash v. Mulle*, at p. 8.

The Court then noted:

As to the present case, this Court has determined that the presumption of the guidelines applies to all net monthly income up to and including the amount of $6,250.00. If monthly income exceeds $6,250.00, the presumption does not apply to the excess of $6,250.00, but does apply to the first $6,250.00. It should be remembered that a rebuttable presumption is not conclusive, but is a substitute for evidence until contradicted by evidence.

*Nash v. Mulle*, at p. 12.

In the instant case, the trial court awarded $2,400 as child support for the two minor children. Thirty two percent of $6,250 is $2,000. Following the *Nash* holding, the rebuttable presumption provided for in T.C.A. § 36–5–101(e)(1) is applicable only to $2,000, and there is no presumption that the additional $400 is appropriate child support. However, Husband asserts in his brief that the court "did not err in awarding child support of $2,400 per month." Moreover, there is proof in the record concerning additional school expense and other items which supports the trial court's award of the additional $400 over the amount for which the rebuttable presumption is created. We concur in the trial court's determination of $2,400 as the correct amount of child support for the two children in this case.

The last issue presented for review by Wife is whether the trial court erred in allowing Husband to claim the two minor children as tax exemptions.

Wife points out that the trial court at the conclusion of the evidentiary hearing stated that Husband would be allowed to take the two children as exemptions for income tax purposes, but that the final decree provides that the exemptions shall go to "defendant" which in this instance is Wife. Obviously, the reference in the final decree

is a typographical error and the parties so concede.

Wife asserts that as of January 1, 1991, the deduction for personal exemptions is being deleted depending upon the tax payer's income bracket. She argues that because of Husband's income he cannot claim the children as personal exemptions and that therefore she should have the benefit of the exemptions for her income tax liability. Husband agrees that if he is not able to take the children as exemptions, that Wife should have them. Under these circumstances, this matter should be remanded to the trial court for a determination of whether Husband can legally take the children as exemptions.

In summary, the finding of the trial court valuing Husband's medical practice in the amount of $200,000.00 is vacated. The final decree is modified to establish the value of the medical practice at $42,818.00 which is divided equally between the parties as a division of marital property. The decree is further modified to require Husband to pay Wife's attorney's fees in the amount of $18,948.00. The case is remanded to the trial court for further proceedings consistent with this Opinion pursuant to T.C.A. § 27–3–128 (1980) to ascertain the proper amount of spousal support to be paid by Husband to Wife and to determine which party shall be entitled to claim the two children as exemptions for income tax purposes. The decree in all other respects is affirmed. Costs of appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.