COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

April 29, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FORTUNEE HOFFMAN        ) HAMILTON COUNTY
                              ) 03A01-9706-CV-00220
    Plaintiff-Appellant     )
                              )
                              )
    v.                     ) HON. WILLIAM L. BROWN,
                              ) JUDGE
                              )
BARRY LYNN HOFFMAN      )
                              ) AFFIRMED IN PART; REVERSED
    Defendant-Appellee     ) IN PART and REMANDED

DAVID E. CAYWOOD and DARRELL D. BLANTON OF MEMPHIS FOR APPELLANT

WILLIAM H. HORTON OF CHATTANOOGA FOR APPELLEE

O P I N I O N

Goddard, P.J.

Fortunee Hoffman and Barry Lynn Hoffman both appeal a divorce judgment rendered by the Hamilton County Circuit Court. The parties raise various issues, hereinafter restated, one of which--relative to alimony--is raised by both parties:

<u>Ms. Hoffman's Issues</u>

1.     Whether the Trial Court erred in quashing a subpoena duces tecum regarding the production of documents relating to Mr. Hoffman's ownership interest in Joseph DeCosimo & Co., LLP.

2.     Whether the Trial Court erred in its valuation and division of the parties' marital property (Mr. Hoffman's partnership interest, the Article IX interest of the partnership agreement, and the marital residence).

3.     Whether the Trial Court erred in the amount of child support ordered to be paid by Mr. Hoffman to Ms. Hoffman.

4.     Whether the Trial Court erred in its allocation of the debts to the parties.

<u>Mr. Hoffman's Issue</u>

1.     Whether the Trial Court erred in awarding Ms. Hoffman a portion of Mr. Hoffman's future contingent interest under his partnership agreement with Joseph DeCosimo & Co., LLP, and if an award of the future interest was appropriate, whether that award should be an after-tax award?

<u>Alimony Issue raised by both parties</u>

Ms. Hoffman insists the alimony awarded is inadequate and Mr. Hoffman claims that it should have been rehabilitative rather than periodic.

The parties were married on December 16, 1973.  Five children were born as a result of the marriage.  At the time of trial (December 1996), Jason Hoffman, age 21, was in his last year at the University of Miami.  Brian Hoffman, age 19, was a freshman at Indiana University.  Richie Hoffman, age 18, was a

2

junior at Notre Dame High School, and will graduate in May 1998. David Hoffman, age 15, was a student at the McCallie School. Michael Hoffman, age 6, was in kindergarten at St. Jude.

Ms. Hoffman was born in Morocco and came to the United States when she was 20 years old. She attended Johnson County Community College but never received a degree. She can speak five languages. Ms. Hoffman did not work throughout the course of the marriage, but stayed at home with the children and acted as the primary caregiver. She took each of the boys to school, cooked, cleaned, and shopped for the family. The Hoffmans also hired help in the home to assist Ms. Hoffman with some of the cooking and cleaning.

Mr. Hoffman is a certified public accountant and a senior tax partner in the accounting firm of Joseph DeCosimo & Co., LLP (hereinafter referred to as "DeCosimo"). He has continually practiced with the firm since 1973. Additionally, Mr. Hoffman is one of three members of the firm's management committee. The parties have accumulated a substantial marital estate through the course of their marriage.

The parties separated sometime in 1995. Ms. Hoffman filed for a bed and board divorce on December 12, 1995. Mr. Hoffman filed a counter-complaint for an absolute divorce. Ms. Hoffman hired Gordon Thompson, a certified public accountant, to attempt to value Mr. Hoffman's interest in DeCosimo. Ms. Hoffman

3

subpoenaed many documents held by DeCosimo. DeCosimo filed a motion to quash which the Trial Court granted in part. The Trial Court quashed the portions of the subpoena that required DeCosimo to produce internal financial statements, client lists, and productivity reports by client. DeCosimo was required to turn over complete documentation regarding the calculation of the husband's interest in the firm set out in the partnership agreement, including the valuation of his capital account, the balance sheet portion of the firm's tax returns, fringe benefits, the value of his accrual and cash basis capital account, and the amount of his bi-weekly salary payments for 1996.

On December 17, 1997, the Trial Court granted the parties an absolute divorce pursuant to T.C.A. 36-4-129 due to the inappropriate conduct of both parties. Ms. Hoffman was granted custody of the three minor children with Mr. Hoffman receiving visitation rights. The Court granted child support of $2,000 per month. He also granted alimony of $3,000 per month payable until the earlier of the remarriage of Ms. Hoffman, death of either party, or further order by the Court. As additional alimony, Mr. Hoffman was ordered to pay mortgage payments on the parties' house, until sold upon their son David's graduation from high school, and the remaining lease payments on the 1996 Acura used by Ms. Hoffman.

Mr. Hoffman's partnership interest in DeCosimo was also at issue in the divorce. The Trial Court held that Mr. Hoffman's

interest in DeCosimo was best valued pursuant to the partnership agreement. Mr. Hoffman presented evidence that his accrual basis equity was worth approximately $359,500. Ms. Hoffman presented evidence that the present value of the accrual basis capital account was worth approximately $388,000. The Court held that Mr. Hoffman's after-tax present value calculation of the accrual basis capital account, as supported by testimony from two of his partners, Joseph DeCosimo and Jerry Adams, was the more accurate valuation. The accrual basis capital account calculation includes Mr. Hoffman's proportionate share of the partnership's cash, fixed assets, accounts receivable, and work in progress. Mr. Hoffman was awarded his partnership interest in DeCosimo, which was valued at $359,500. To more equitably dispose of the assets and liabilities of the parties, the Court awarded Ms. Hoffman an additional property division of a lump sum of $150,000. This lump sum is to be paid in annual installments of $15,000 for a period of 10 years. Mr. Hoffman may repay this sum at any time. Further, the $150,000 obligation shall not earn interest unless Mr. Hoffman is more than 10 days late with a payment.

Another contentious issue in the divorce was Mr. Hoffman's contingent future interest under Article 9 of the DeCosimo Partnership Agreement. Mr. Hoffman will receive this Article 9 benefit upon his retirement after age 62, death, or disability. The Article 9 benefit is valued as an amount equal to two times the greater of the terminating partner's average

5

annual income from the partnership (salary and other) for (1) the most recent five full calender years immediately prior to the terminating event, or (2) five full calender years ending with the year in which the terminating partner attains age 62. This amount is paid over a period of 10 years. The Court found that uncertainties exist as to whether the Article 9 benefit will be received and the value of the benefits. Therefore, Ms. Hoffman was awarded, under Cohen v. Cohen, 937 S.W.2d 823 (Tenn.1996), a percentage of the gross amount of each payment when and as received by Mr. Hoffman under Article 9. The Court developed the following formula to determine the percentage of the monthly payment that Ms. Hoffman will receive: one-half of 12 over 12 plus N [0.5*(12/(12 + N))], where N is equal to the number of years from the date of divorce until the year the first payment is payable under Article 9, and 12 being the number of years during the parties' marriage that the benefit accrued.[1] Ms. Hoffman must pay all tax obligations on her portion of the Article 9 benefits received.

The remainder of the marital assets and liabilities were divided by the Trial Court. A copy of the Trial Court's division of marital property schedule is attached as Appendix A to this opinion. The Trial Court found that Ms. Hoffman received

---

[1] For example, assume that Mr. Hoffman retires at the age of 70. Further, assume that the monthly Article 9 benefit received by Mr. Hoffman is $5,000. The N term would be equal to 17 since Mr. Hoffman was 53 years old at the time of divorce and worked for an additional 17 years after the divorce. Application of the formula would yield the following result:
$5,000 * 0.5 * (12/(12 + 17)) = $5,000 * 0.5 * 0.414 = $1,034.48. Therefore, Ms. Hoffman would receive $1,034.48 per month while Mr. Hoffman would receive the remainder of the monthly Article 9 benefit.

approximately $50,000 more than an equitable split of the assets and debts between the parties. However, the award was justified since Mr. Hoffman's earning capacity is much greater than Ms. Hoffman's.

Our review of cases tried without a jury is de novo upon the record with a presumption of correctness as mandated by Rule 13(d) of the Tennessee Rules of Appellate Procedure. This Rule requires us to uphold the factual findings of the trial court unless the evidence preponderates against them. Campanali v. Campanali, 695 S.W.2d 193 (Tenn.App.1985). Also, trial courts have wide discretion concerning the division of the parties' marital estate. Wallace v. Wallace, 733 S.W.2d 102 (Tenn. App.1987). The trial court's division of marital property is entitled to great weight on appeal and is presumed proper unless the evidence proves otherwise. Batson v. Batson, 769 S.W.2d 849 (Tenn.App.1988); Lancaster v. Lancaster, 671 S.W.2d 501 (Tenn.App.1984). It is with these standards in mind that we undertake our review of the Trial Court's decision.

Ms. Hoffman's first issue on appeal is whether the Trial Court erred in quashing a subpoena duces tecum regarding the production of documents relating to Mr. Hoffman's ownership interest in Joseph DeCosimo & Co., LLP. The decision to quash a subpoena duces tecum rests in the sound discretion of the trial court. Ogrodowczyk v. Tennessee Bd. for Licensing Health Care Facilities, 886 S.W.2d 246 (Tenn.App.1994); Brown v. Brown, 863

7

S.W.2d 432 (Tenn.App.1993). A subpoena duces tecum may be denied if the subpoena would impose an undue burden and substantial expense, if most of the materials sought could be obtained elsewhere, or if the materials sought are not sufficiently relevant to the proceedings to justify the burden and expense. Ogrodowczyk, supra; Brown, supra.

Before determining whether the Trial Court properly quashed the subpoena duces tecum, we must first pass upon the underlying question, whether the Court utilized the proper valuation techniques for Mr. Hoffman's partnership interest in DeCosimo. The Trial Court valued the partnership interest according to the method set out in the Partnership Agreement, which excluded any goodwill factor. Courts may utilize several different methods to value partnership interests. Hazard v. Hazard, 833 S.W.2d 911 (Tenn.App.1991); Smith v. Smith, 709 S.W.2d 588 (Tenn.App.1985). We find that the Trial Court's valuation as established in the Partnership Agreement is consistent with Hazard and Smith. Although other valuation variations may be utilized, the Trial Court acted within its discretion in applying the Partnership Agreement valuation method.

The portions of the subpoena duces tecum which were quashed sought internal financial statements, client lists, and productivity reports by client. These materials were unnecessary for calculation of the partnership interest under the Partnership Agreement. We note that the requested materials are confidential and sensitive materials used for internal business purposes.

8

Courts should force a company to disclose this information only when absolutely necessary.

DeCosimo disclosed all documents required to value Mr. Hoffman's partnership interest under the Partnership Agreement. Since the materials in the quashed portion of the subpoena sought by Ms. Hoffman were unnecessary for use in the valuation technique approved by the Court, Ms. Hoffman has shown insufficient grounds for disturbing the Trial Court's discretionary decision.

Ms. Hoffman's second issue on appeal is whether the Trial Court erred in its valuation and division of the marital property. This issue specifically calls into question the valuation and division of Mr. Hoffman's partnership interest, the Article IX interest of the Partnership Agreement, and the marital residence. We first discuss the valuation and division of Mr. Hoffman's partnership interest. As discussed above, we find that the Trial Court properly valued Mr. Hoffman's partnership interest by using the method set out in the DeCosimo Partnership Agreement. The Trial Court divided the partnership interest by awarding the partnership interest to Mr. Hoffman and awarding Ms. Hoffman $150,000 cash, payable in 10 annual payments of $15,000 without interest. The Trial Court found that this division awarded Ms. Hoffman more than an equitable division of the marital property but stated that it was fair due to the difference in the earning capacities of the parties. T.C.A. 36-4-121(a) provides that marital property must be equitably divided without regard to fault. An equitable division is not necessarily an equal one. In light of the overall division of

9

the marital property, we find that this division of the partnership interest is equitable and should stand.

However, Ms. Hoffman raises the additional issue of whether interest should be awarded on the $150,000 award. T.C.A. 47-14-121 mandates that:

> Interest on judgments, including decrees, shall be computed at the effective rate of ten percent (10%) per annum, except as may be otherwise provided or permitted by statute; provided, that where a judgment is based on a note, contract, or other writing fixing a rate of interest within the limits provided in § 47-14-103 for that particular category of transaction, the judgment shall bear interest at the rate so fixed.

We read this Code Section to mean that if a court does not otherwise provide and a statutory provision does not otherwise permit, interest shall be awarded according to T.C.A. 47-14-121. See Brown v. Brown, 913 S.W.2d 163 (Tenn.App.1994); Inman v. Inman, 840 S.W.2d 927 (Tenn.App.1992). In Brown, this Court awarded an additional cash award payable over time without interest. The Inman Court ruled that interest should be awarded on a cash award payable over time while the trial court had been silent on the issue. Thus, it appears that in domestic relations cases, a court making a cash award over time--whether this Court or the Trial Court--is clothed with the discretion to award or deny interest thereon.

In this case, the Trial Court ruled that no interest would be paid on the $150,000 cash award payable over 10 years. The Trial Court acted well within its discretion in awarding no interest since Ms. Hoffman received $50,000 more than Mr. Hoffman

10

after the division of the parties' assets and liabilities. By not awarding interest, the Trial Court attempted to more equitably divide the parties' assets and liabilities. Therefore, we uphold the Trial Court's decision in awarding no interest on the cash award.

Next, we consider the valuation and division of the Article IX interest in the Partnership Agreement. Mr. Hoffman raises the additional issue of whether, if a division of the future interest is proper, the award should be an after-tax award. The Article IX future interest is awarded upon Mr. Hoffman's death, retirement, or disability while a partner of DeCosimo. This future interest acts as a retirement benefits plan. Mr. Hoffman will not receive these future interest benefits if he retires before the age of 62, he is expelled from the firm, or the firm is dissolved. Although the likelihood that Mr. Hoffman will receive these benefits is good, the future interest is still speculative since events can occur which will bar the receipt of the future interest. As a result, the Trial Court devised a formula, set out above, to divide Mr. Hoffman's Article IX future interest.

Our Supreme Court has held that a deferred distribution method should be used to distribute unvested retirement benefits when the vesting is uncertain. Cohen v. Cohen, supra. The deferred distribution method allows the court to determine the formula for dividing the monthly benefit at the time of the decree while delaying the actual distribution until the future interest becomes payable. The division method suggested in Cohen is that the trial court should award a percentage of the marital

11

property interest.  This percentage may be formulated by dividing the number of months of the marriage during which the benefits accrued by the total number of months that the benefits accumulated.  The Cohen Court further instructed that the valuation method remains within the discretion of the trial court and that court's decision should not be disturbed unless the division is not essentially fair in light of all circumstances of the case.

Mr. Hoffman's Article IX benefits are presently unvested since Mr. Hoffman will not receive these benefits upon the occurrence of certain events.  The value of such benefits is also speculative since the monthly future interest payments are based upon an average of the previous five years earnings.  Since these earnings are unknown until the time when the future interest vests, the Trial Court properly utilized the deferred distribution method set out in Cohen.  We also find that the Trial Court's formula is an equitable method of division and follows the suggestions of Cohen.  Thus, we uphold the Trial Court's division of the Article IX benefits.

The Trial Court ordered Ms. Hoffman to pay taxes on her share of the monthly Article IX benefits she receives.  Mr. Hoffman requests this Court to award an after-tax division.  This would allow Mr. Hoffman to receive a tax deduction on the entire amount of the monthly benefit payment while Ms. Hoffman would receive theoretically the same amount but without the tax benefit.  We find this request unfair to Ms. Hoffman and uphold the Trial Court's order.  Ms. Hoffman shall directly receive one-half of her percentage of the gross monthly benefit payment from

DeCosimo while Mr. Hoffman shall receive the remainder. The direct payment from DeCosimo to each party will prevent Mr. Hoffman from listing on his tax returns that he paid Ms. Hoffman one-half of the total monthly benefit payment. Each shall pay the appropriate tax on their share of the monthly benefit payment.

Ms. Hoffman also appeals the valuation and division of the marital residence. The Trial Court actually averted valuation through the division of the residence. The Court ordered the home sold three years after the decree was issued. Ms. Hoffman would then receive 60 percent of the net equity. Mr. Hoffman must pay the mortgage payments until the house is sold. The marital residence of the parties is a large home and only one child will be living at home with Ms. Hoffman at the time the house is to be sold. In light of the Trial Court's overall division of the marital property, we find this division of the martial residence equitable to both parties.

The third issue on appeal is whether the Trial Court erred in the amount of child support ordered. At the time of trial, three of the parties' children were minors. Ms. Hoffman received custody of the children and was awarded $2,000 per month as child support by decree of the Trial Court. The Court provided no support nor analysis in reaching a determination of the amount of child support. Nor did the Court apply the Child Support Guidelines to formulate the child support amount.

Courts shall apply as a rebuttable presumption the Child Support Guidelines whenever making its determination

concerning the amount of child support. T.C.A. 36-5-101(e)(1). The court can rebut this presumption if it finds sufficient evidence and makes a written finding that applying the Guidelines would be unjust or inappropriate. T.C.A. 36-5-101(e)(1). The Trial Court did not apply the Child Support Guidelines nor did it make a written finding on why the Guidelines should not be applied. Therefore, we must reverse the Trial Court's decision on the amount of child support awarded.

In determining the appropriate amount of child support, we begin with the Child Support Guidelines. Rule 1240-2-4-.04(3) states:

> The court must order child support based upon the appropriate percentage of all net income of the obligor as defined according to 1240-2-4-.03 of this rule but alternative payment arrangements may be made for the award from that portion of net income which exceeds $6,250. When the net income of the obligor exceeds $6,250 per month, the court may establish educational or other trust funds for the benefit of the child(ren) or make other provisions in the child(ren)'s best interest; however, all of the support award amount based on net income up through $6,250 must be paid to the custodial parent.

The percentage of net income is 41 percent for three children and 32 percent for two children. Rule 1240-2-4-.03(5).

Ms. Hoffman contends that Mr. Hoffman's monthly net income is $15,226.35, while Mr. Hoffman estimates his monthly net income as $14,592. After reviewing the record, we note that the Trial Court made no findings of fact on the amount of Mr. Hoffman's net monthly income. However, Mr. Hoffman definitely earns more than $6,250 of net income per month. Therefore, we hold that Mr. Hoffman must pay 41 percent of $6,250 per month to

14

Ms. Hoffman until their son Richie graduates in May 1998. Thus, Mr. Hoffman must pay Ms. Hoffman $2,562.50 per month. Mr. Hoffman must also pay the difference between the $2,562.50 per month ordered in this opinion and the $2,000 per month ordered by the Trial Court for all payments previously made. After Richie graduates in May 1998, Mr. Hoffman must pay Ms. Hoffman 32 percent of $6,250 per month, which equals $2,000 per month.

In light of the division of the marital property and the alimony awarded, discussed below, we hold that this amount of alimony should allow the Hoffmans' children to enjoy an equivalent lifestyle to that enjoyed before their parents' divorce. In addition, Mr. Hoffman must continue to pay the private school educational expenses for all of the minor children. This award complies with the 1994 version of Rule 1240-2-4-.04(3) since the Court has discretion to award educational expenses in addition to the child support award when the net income exceeds $6,250 per month. Either party may petition the Court for an alteration of the child support award whenever warranted by changed circumstances.

Ms. Hoffman argues that the child support should also be increased since Mr. Hoffman did not spend a substantial amount of time with his children before the divorce. Rule 1240-2-4-.04(1)(b) allows for such a modification only when the children are not staying with a parent for the full duration of that parent's visitation rights. We have no facts on the issue of whether Mr. Hoffman is fully utilizing his visitation privileges. Ms. Hoffman must petition the Trial Court and put forth sufficient evidence before the award of child support will be

altered.  Therefore, the child support award stands as previously stated in place of the Trial Court's award.

Ms. Hoffman's fourth issue on appeal, as previously noted, is whether the Trial Court erred in the amount of alimony awarded to Ms. Hoffman.  Mr. Hoffman also raises the issue of whether the Trial Court erred in awarding Ms. Hoffman periodic alimony as opposed to rehabilitative alimony.  We begin our analysis by examining whether the Trial Court awarded the appropriate type of alimony.  Periodic alimony is paid monthly until the death of either party or the remarriage of the party receiving alimony.  Rehabilitative alimony should be awarded when the party receiving alimony could never be rehabilitated relative to the earnings of the party paying alimony.  Whenever one of the parties is economically disadvantaged and rehabilitation is not feasible in consideration of all relevant factors, then the court should order payment of support until the death of either party or remarriage of the party receiving alimony.  T.C.A. 36-5-101(d)(1).

The Hoffmans were married for over 23 years.  Ms. Hoffman has no college degree and worked in the home for the duration of the marriage as a homemaker.  She also has no vocational skills.  Mr. Hoffman, on the other hand, is a senior tax partner in the DeCosimo accounting firm who earns in excess of $200,000 per year.  Although Ms. Hoffman speaks five languages, she can never be rehabilitated and will remain economically disadvantaged in comparison to Mr. Hoffman. Therefore, we hold that the Trial Court properly awarded Ms. Hoffman periodic alimony.

16

The Trial Court awarded as alimony $3,000 per month in addition to $2,000 per month on the house note payment, Ms. Hoffman's car lease payments, and health insurance for Ms. Hoffman for three years at $67.00 per month. This amounts to $5,467 per month alimony until the house is sold. The Trial Court found that Ms. Hoffman had excessive spending habits and could live comfortably on the amount of alimony awarded.

Courts must look to all relevant factors, including those set out in T.C.A. 36-5-101(d)(1)(A-L) in determining the amount of alimony. After reviewing those factors, considering Ms. Hoffman's excessive spending habits, the disparity in the parties' incomes, and the division of the marital property and debts, we uphold the Trial Court's award of alimony. The Trial Court acted well within its discretion and equitably awarded a sufficient amount of alimony to Ms. Hoffman.

The final issue for consideration, as previously noted, is whether the Trial Court erred in its allocation of the debts to the parties. T.C.A. 36-5-121 requires the court to make an equitable division of assets and debts. After the marital assets have been equitably divided, the court has the discretion to order the payment of marital debt in a just and equitable manner considering the respective earning capacities of the parties. Hanover v. Hanover, 775 S.W.2d 612 (Tenn.App.1989).

Although the parties disagree as to what debt should properly be considered as marital debt, it is apparent from the record that the Trial Court ordered Mr. Hoffman to pay the majority of the debt owed by the parties. Considering Mr.

17

Hoffman's earning capacity is much greater than Ms. Hoffman's, the division of the marital property, and the support payments Mr. Hoffman must pay, we conclude that the Trial Court acted well within its discretion and equitably divided the marital debt. Thus, we affirm the Trial Court's division of the marital debt.

For the foregoing reasons, the judgment of the Trial Court is affirmed in part, reversed in part, and the cause remanded for such further orders, if any, as may be necessary and collection of costs below. Costs of appeal are adjudged one-half against Mr. Hoffman and one-half against Ms. Hoffman and her surety.

_____
Houston M. Goddard, P.J.

CONCUR:


_____
Charles D. Susano, Jr., J.


_____
William H. Inman, Sr.J.

18