IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 2000 Session

## NATHANIEL SHELBOURNE v. JULIA SHELBOURNE

**Appeal from the Circuit Court for Davidson County**
**No. 98D-1916      Muriel Robinson, Judge**

_____

**No. M1999-02557-COA-R3-CV - Filed August 22, 2000**

_____

The trial court granted the wife a divorce, awarded her custody of the parties' minor child, divided the marital property, and ordered the husband to pay rehabilitative alimony for two years. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Clark Lee Shaw, Nashville, Tennessee, for the appellant, Nathaniel Shelbourne.

David O. Huff, Nashville, Tennessee, for the appellee, Julia Shelbourne.

## OPINION

### I. AN UNHAPPY MARRIAGE

Nathaniel Shelbourne and Julia Lewis married on November 27, 1990. Both had children from earlier marriages. A daughter, Kieara Renee Shelbourne, was born to the parties on February 4, 1991. Their marriage was not a happy one. Mr. Shelbourne apparently had a drinking problem, and the parties engaged in violent arguments in which they called each other vile names, threw things, and struck each other. The items mentioned as having been thrown included a glass, a skillet, a pot, and a radio. Although the husband claimed that his wife usually initiated physical contact, she suffered the worst injuries, including two black eyes and having her front teeth knocked out.

In March of 1998, Nathaniel Shelbourne left the marital home and moved in with his brother. On June 23, 1998, he filed a complaint for absolute divorce. The wife filed an answer and a counter-complaint for absolute divorce on July 8, 1998. The parties were the only witnesses to testify at the hearing of the case, which was conducted on July 6, 1999.

The trial court found both parties to be at fault, but determined the fault of Mr. Shelbourne to be greater than that of his wife, and accordingly awarded the divorce to the Mrs. Shelbourne on the ground of inappropriate marital conduct. *See* Tenn. Code. Ann. § 36-4-129(b). The court also awarded her custody of Kieara, with reasonable visitation for the father. He was ordered to pay child support of $138.60 per week.

The marital estate had included three pieces of real property located in Nashville. The wife was awarded the marital home, located at 2626 Bethwood Terrace. A duplex at Highland Terrace that Mr. Shelbourne had purchased during the marriage was ordered to be sold, with the proceeds to be divided equally between the parties. The husband had also bought a house on North Fifth Street during the marriage, and sold it while the divorce was pending. He put net proceeds of $30,000 into a safety deposit box. The court awarded this entire amount to the husband.

The court also awarded the wife one-half of the thrift savings plan that the husband had accumulated during the marriage, and one-half of the military pension that he had earned during the same period. Finally, the court ordered Mr. Shelbourne to pay his wife rehabilitative alimony of $250 per month for two years, and attorney fees of $3,150.

## II. THE QUESTION OF FAULT

The emphasis in this appeal is primarily on the property division. However, Mr. Shelbourne also argues that the trial court erred in finding that his fault was greater than that of his wife's and in using this finding as the basis for awarding the divorce to Mrs. Shelbourne, and for granting her sole custody over their daughter.

Findings of fact by the trial court are entitled to a presumption of correctness, and will not be reversed by this court unless the evidence predominates otherwise. Tenn. R. Civ. P. 13(d). The court's finding that Mr. Shelbourne's fault was greater than that of his wife is supported by graphic evidence of the injuries he inflicted on her, by his guilty pleas and convictions on two charges of assault against her, and by her testimony as to his drinking problems.

Mr. Shelbourne argues that Mrs. Shelbourne initiated their fights by throwing things at him, and implies that he was just responding to provocation, or that she was injured when he was merely trying to defend himself. For example, in the incident in which her front teeth were knocked out, he claims that she was trying to pick up a radio to throw at him, and that "when I grabbed the radio the radio hit her in the mouth."

We do not wish to minimize the damage Mrs. Shelbourne has caused to herself and to the marriage by her lack of self-control when she became angry, and by the violence she offered to her husband by throwing things. The evidence shows however, that Mr. Shelbourne also called his wife names and threw things at her, and that his violent actions, whether in response to provocation or otherwise, resulted in physical injuries to Mrs. Shelbourne. It is apparent to us that as the bigger and

stronger party, Mr. Shelbourne had the greater obligation to show restraint in order to avoid causing injuries.

Further, although the testimony of the parties differs somewhat on this matter, it also appears that Mr. Shelbourne had a drinking problem, and often stayed out all night after work instead of coming home, and that this was what enraged Mrs. Shelbourne. After considering all the evidence, we do not find that the evidence preponderates against the trial court's finding of fault.

When both parties are at fault for the failure of a marriage, the trial court may either declare the parties to be divorced, or may grant the divorce to the party who was less at fault. Tenn. Code. Ann. § 36-4-129(b). Such a choice is in the sound discretion of the trial court. We do not find that the court abused its discretion in granting the divorce to the wife.

## III. CHILD CUSTODY

Mr. Shelbourne asked in his complaint that the parties be granted joint custody of Kieara, with Mrs. Shelbourne to receive physical custody. He argues on appeal that this would have been the better disposition of the custody question, because despite any deficiencies he may have had as a husband, Mrs. Shelbourne admitted that he was a good father.

Awards of joint custody are authorized by statute, *see* Tenn. Code. Ann. § 36-5-101, but they are generally disfavored by the courts, in part because individuals who are unable to remain married usually find it difficult to agree upon the child-rearing decisions that parents must inevitably make. *See Dodd v. Dodd*, 737 S.W.2d 286, 289 (Tenn. Ct. App. 1987), *Malone v. Malone*, 842 S.W.2d 621 (Tenn. Ct. App. 1992).

In the present case, neither party challenged the other's fitness for parental responsibilities, and they both apparently agreed that primary custody was to remain with the mother. It was therefore a matter for the discretion of the trial court to determine whether to decree that the mother's custody be sole, with reasonable visitation by the father, or primary, with joint responsibility exercised by the father. As a practical matter, these can be almost identical, except that with joint custody there is a greater opportunity for the father to participate in (or interfere with) child-rearing decisions. We do not believe the trial court abused its discretion by giving sole custody to the mother.

## IV. THE MARITAL PROPERTY

Mr. Shelbourne objects strenuously to the manner in which the trial court divided the marital property. Rather than attacking the actual division directly, however, the appellant argues that the trial court erred in failing to make explicit findings of fact in regard to the value of the real property. He thus contends that there is no basis upon which we can determine whether the division was equitable, and he urges us to remand this case to the trial court for further factual findings. While this court acknowledges the usefulness of such explicit findings when we review decrees ordering

property division, it appears to us that in this case we can adequately review the trial court's order without such findings.

The trial court is charged with reaching an equitable division of the marital property without regard to fault. Tenn. Code. Ann. § 36-4-121(a). An equitable division is not necessarily an equal one. *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn. Ct. App. 1991). However in this case, because of the duration of the marriage, the size of the marital estate, the contribution of both parties to the acquisition, preservation and appreciation of the property at issue, and the relative inequality in their earning capacities, the equities require a division of the property that is at least roughly equal. *See* Tenn. Code. Ann. § 36-4-121(c).

The trial court awarded the wife exactly half of the savings and military retirement benefits acquired by the husband during the marriage (the wife had no savings or retirement benefits of her own). The proof in the record also indicates that the trial court made an equitable and roughly equal division of the real property. That proof includes the testimony of both parties, as well as Multi-Listing Service (MLS) sheets prepared by realtors in 1998 when Mr. Shelbourne put all three properties up for sale.

The proof showed that the marital home had been acquired by Mr. Shelbourne in 1986, prior to his marriage, but that he and Mrs. Shelbourne both worked long hours to improve it, and had added a two-car garage, a central air-conditioning system, a paved driveway and gas logs. Mr. Shelbourne paid about $43,000 for the house in 1986. He acknowledged that the improvements made by both parties had increased its value, which he testified to be around $55,000 (The MLS had marked it for sale at $79,900). At the time of divorce, the balance on the mortgage was $41,000.

Although property acquired prior to marriage is considered to be the separate property of the acquiring party, any increase in the value of the separate property that occurs during the course of the marriage is considered marital property if "each party substantially contributed to its preservation and appreciation . . . ." Tenn. Code. Ann. § 36-4-121(b). In this case, it appears that most of the equity presently existing in the marital home was created by both parties during the course of their marriage, and that the trial court was entitled to treat it as marital property.

The other properties were acquired during the parties' marriage, and the evidence shows that they both worked hard at renovating and repairing them. Mr. Shelbourne testified that the value of the duplex at Highland Terrace was between $50,000 and $55,000. The MLS listing recites a price of $59,900, and a mortgage balance of $23,000. Since the trial court ordered the property sold, and the net proceeds divided equally between the parties, the exact value of the property is not really necessary to our inquiry.

As we stated earlier, Mr. Shelbourne sold the property on North Fifth Street while the divorce was pending. After paying off the mortgage and other costs, he netted $38,000. He used about $8,000 to pay taxes, and placed the remainder in a safety deposit box. The trial court awarded this sum to him. Thus, of the three properties the parties owned and worked on during their marriage,

the wife got the benefit of one, the husband of another, and the benefit of the third was equally divided between them. We can find no fault in the trial court's division of the marital property.

## V. ALIMONY

The trial court awarded Mrs. Shelbourne rehabilitative alimony of $250 per month, to be paid for two years. Mr. Shelbourne points out on appeal that neither party mentioned alimony during the trial of the case, and argues that there is an insufficient foundation in the record for the court to evaluate the numerous factors that go into an alimony determination. *See* Tenn. Code. Ann. § 36-5-101(d).

However, Mrs. Shelbourne did ask for alimony of $500 per month in her counter-complaint for divorce, and as this court has stated on numerous occasions, the dominant factors in determining spousal support are the needs of the spouse to whom support is awarded, and the ability of the other spouse to pay. *Hazard v. Hazard*, 833 S.W.2d 911 (Tenn. Ct. App. 1991); *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. Ct. App. 1984); *Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn. Ct. App. 1981).

The proof showed that Mr. Shelbourne was a postal employee with wages from his job of almost $45,000 annually. Mrs. Shelbourne works nearly full-time at Genesco, and earns $7.45 an hour. The monthly income and expense statements of both parties are in the record. They indicate that Mr. Shelbourne does have the capacity to pay a moderate amount of alimony out of his income, and that Mrs. Shelbourne's expenses exceed her income. It does not appear to us that the trial court abused its discretion by ordering Mr. Shelbourne to pay alimony.

## VI.

We affirm the judgment of the trial court. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.