IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

September 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

HENRY LEE HULSHOF,                 )
                                    )
        Plaintiff/Appellee          )        Appeal No.
                                    )        01A01-9806-CH-00339
v.                                  )
                                    )        Marshall County Chancery
DOROTHY ANN HULSHOF,               )        No.  10075
                                    )
        Defendant/Appellant.        )
                                    )

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR MARSHALL COUNTY
AT LEWISBURG, TENNESSEE

THE HONORABLE TYRUS H. COBB PRESIDING

RONDAL T. WILSON
200 E. DEPOT ST.
P.O. BOX 336
SHELBYVILLE, TN 37160

        ATTORNEY FOR PLAINTIFF/APPELLEE

LAWRENCE D. SANDS
P.O. BOX 1660
102 WEST 7TH STREET
COLUMBIA, TN 38402-1660

        ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AS MODIFIED IN PART, VACATED
IN PART, AND REMANDED

                            PATRICIA J. COTTRELL, JUDGE

CONCUR:
KOCH, J.
CAIN, J.

## OPINION

Henry Lee Hulshof ("the husband") commenced this divorce action, alleging inappropriate marital conduct or, alternatively, irreconcilable differences. Two weeks later, his wife of twenty-seven years, Dorothy Ann Hulshof ("the wife") responded by filing an answer and counter-petition alleging inappropriate marital conduct, irreconcilable differences, and adultery. After a bench trial, the court below awarded the wife a divorce on the ground that the husband had committed inappropriate marital conduct. The court divided the parties' personal property between them and awarded the wife rehabilitative alimony in the amount of $300 per month for two years and one half the value of the husband's retirement benefits calculated as of March 2, 1998. The court also equally divided the funds in the couple's various accounts and ordered their real property sold and the proceeds divided equally. The wife appealed, challenging the property distribution, the amount of alimony awarded, and the court's failure to award her sufficient attorney fees. We affirm in part as modified, vacate in part, and remand for proceedings consistent with this opinion.

The parties married in 1970, when the wife was seventeen years old and just days after she graduated from high school. The wife did not continue her education. The couple had two children, both of whom were adults when the parties separated. At the time of trial, the wife was forty-six (46) years old. The couple had been married for twenty-seven (27) years when the divorce complaint was filed.

Throughout the marriage, the husband worked at Inner City Products. His approximate yearly income was between $31,500 and $35,500, depending

on the amount of overtime he worked. The job provided retirement benefits, but at trial the husband was unsure of their value.

The wife worked at numerous jobs during the marriage. However, in 1985, she injured her back at work and underwent surgery. After that injury, she received a $7,000 lump sum worker's compensation award. In 1994, she had surgery to treat carpal tunnel syndrome. Apparently, the wife ceased working outside the home after this surgery. She subsequently received a $19,000 workers compensation settlement. In May of 1997, she was determined to be disabled and entitled to disability payments by the Social Security Administration. She received a $6,000 disability payment covering back pay at that time and began drawing $472 in monthly social security disability benefits which is her sole income. The wife testified she also underwent a second carpal tunnel surgery, a second lower back surgery, and suffered from degenerative arthritis in her ankles, a degenerative muscle disorder, and a degenerative nerve disorder. The wife admitted that notwithstanding her disability, she was able to clean the house, babysit, drive her car, crochet, and do some yard work.

At the time of trial, the parties jointly owned their residence, which the parties valued at $50,000 to $60,000. The outstanding balance on the mortgage was approximately $5,100, and the monthly mortgage payments were $98. The parties also owned a nearby lot, valued at approximately $5,000. The parties had no joint accounts at the time of trial. The husband testified that his checking account had a $535.58 balance, the assets in his savings totaled $102.00, and his credit union accounts held approximately $3,018. In the approximately six months before the husband filed his petition for divorce, the balances in his credit union accounts plummeted from over $23,000 to just over $3,000. The husband's explanation for the dissipation of the account was that he made some

improvements around the house, and may have gambled some of the money away.

During the course of these proceedings, the parties requested an Order of Reconciliation, and attempted to put aside their differences. Those efforts failed. At the close of the evidence, the trial court granted the wife a divorce based upon the husband's inappropriate marital conduct. Although the trial court awarded the wife the above-mentioned rehabilitative alimony, it denied her request for *in futuro* or *in solido* alimony. Attorney's fees were awarded to the wife in the amount of $1,200. The trial court subsequently entered an order staying all proceedings, except the alimony obligation, in connection with the enforcement of the judgment, pending final determination on appeal.

I.

The wife raises four issues, all of which are related to the financial impact of the court's decision. Essentially, she asserts that the distribution of assets and the limited award of alimony will preclude her from meeting her minimal living expenses. She further asserts that the economic disparity between the parties, the length of the marriage, and her disability justify an award to her of a greater share of the marital property and/or alimony *in futuro* or alimony *in solido*. She also asserts that the money dissipated by the husband from his credit union accounts should be taken into consideration in dividing the marital assets and that she should have been awarded all her attorney's fees. Although the issues are separately raised, the effect of the trial court's ruling must first be examined in totality.

The wife's sole income is her disability payment of $472 per month. For two years, the income will be supplemented by the rehabilitative alimony of $300 per month. The wife's monthly expenses total $616.33. This figure

includes the $98 house payment, and the record indicates the least expensive alternative rental property would cost $300 per month. Thus, either the cessation of the rehabilitative alimony or the requirement that the wife move out of the marital residence, both of which are contemplated by the order, would reduce the wife's income below her expenses. Her attorney's fees, before the appeal, exceeded the amount awarded by the court by $2,145.

Her share of the distribution of the major marital assets includes half the proceeds of the sale of the house and the lot (approximately $27,500), half the accounts (approximately $1,659.15), half of the proceeds of the sale of a trailer ($1,000) and half of the husband's retirement as of March 2, 1997 (the value of the retirement asset, the monthly amount she would receive, and the date of eligibility are unknown).

In addition, the wife's health problems, especially as they affect her ability to work, are relevant to both the distribution of marital property and the award of alimony. She is totally disabled and, according to her testimony, cannot perform repetitive functions, cannot sit for long periods of time, and cannot bend, stoop, or lift. Although she does her own housework and some yard work (using a riding mower), she must stop frequently and can only do a little work at a time. It is undisputed that she has had two back surgeries and two operations for carpal tunnel syndrome.

II.

In her first issue, the wife maintains that the trial court erred in limiting the award to the assets the parties possessed at the time of separation. She argues that she was entitled to a portion of the recently dissipated funds ($20,000) from the husband's accounts at one credit union.

The division of the marital estate necessarily commences with the

classification of the parties' property. *See Brown v. Brown*, 913 S.W.2d 163, 166 (Tenn. App. 1994). The now-familiar statutory definitions of marital property and separate property provide the ground rules for this task. Tenn. Code Ann. §§ 36-4-121(b)(1) and (2)(1996). Implicit in this statutory scheme is the concept that the property to be divided, generally speaking, must be "owned by the parties, individually or jointly, at the time of the divorce." *Brock v. Brock*, 941 S.W.2d 896, 900 (Tenn. App. 1996). This is so because courts ordinarily "cannot divide and/or distribute what is 'not there' --- property no longer owned by the parties . . . at the time of the divorce." *Id.*

Applying these principles to the instant case, we find the trial court properly limited its decision on the division of marital property to that in which the parties possessed an ownership interest at the time of the divorce.

With regard to the wife's contention that trial court erred by rejecting her claim that the dissipation of the funds constituted a fraudulent conveyance within the purview of Tenn. Code Ann. § 36-4-121(b)(1)(A), the wife bears the burden of showing that the evidence preponderated against that finding. *See Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. App. 1990); Tenn. R. App. P. 13(d). In rejecting that claim, the trial court considered the husband's testimony that he spent a portion of the money on home improvements, gambling, bills, and groceries. *See Massingale v. Massingale*, 915 S.W.2d 818, 819 (Tenn. App. 1995) (trial court's assessment of witness credibility is entitled to great weight on appeal). While the evidence shows that the husband's accounts decreased monthly by significant but differing amounts in October, November, and December of 1996 and January of 1997, the wife offered no evidence of a

fraudulent conveyance. The husband testified that he spent the money.[1] Inasmuch as the wife presented no facts or law requiring a different result, we must conclude that she has failed to satisfy her burden.

Our decision that the trial court correctly defined the marital estate as property actually owned at the time of the divorce does not, however, preclude consideration of the husband's pre-filing dissipation of approximately $20,000. Tennessee Code Annotated § 36-4-121(c)(5) specifically authorizes the court to consider a party's "dissipation of the marital or separate property" when fashioning an equitable distribution of marital property. *See also Meadows v. Meadows*, Appeal No. 01-A-01-9801-CH-00054, 1998 WL 770190 (Tenn. App. 1998). We discuss the effect of that dissipation on the division of property in section IV below.

### III.

The wife argues that the trial court erred in declining to award alimony *in solido* or *in futuro*. The husband responds that the wife's admitted level of activity demonstrates that she is capable of rehabilitating herself, but she lacks the desire to do so.

Tennessee law provides for three types of alimony: (1) rehabilitative alimony, which provides modifiable, temporary support for a period of adjustment sufficient to enable a dependent spouse to become partially or totally self-sufficient; (2) periodic alimony or alimony *in futuro,* a continuing, but modifiable, support obligation to an economically disadvantaged spouse; and (3) alimony *in solido*, an unmodifiable lump sum award which may be payable

---

[1] The trial court found that both parties had dissipated substantial sums from their assets during their marriage. The court was commenting upon the settlement the wife received in 1994 and the disability back pay she received in 1997. With regard to the husband's accounts, the court noted, "He had gotten rid of some money without a lot of explanation shortly before the divorce was filed."

over time. Tenn. Code Ann. § 36-5-101(d)(1)(1996); *see Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. App. 1997). Our law favors rehabilitative alimony whenever possible and requires a finding that rehabilitation is "not feasible" before an award of alimony *in futuro* is appropriate. Tenn. Code Ann. § 36-5-101 (d) (2); *see Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993). In reviewing the propriety of an alimony award, we must consider a number of factors, including the relative earning capacity, obligations, needs and financial resources of the parties, including income from pension, profit sharing, or retirement plans. Tenn. Code Ann. § 36-5-121(d)(1). The predominant factors to consider, however, are the innocent[2] spouse's need, and the obligor spouse's ability to pay. *See Hazard v. Hazard*, 833 S.W.2d 911, 917 (Tenn. App. 1991).

Here, the record shows that the husband earned a yearly income of approximately $32,000. The wife received a monthly income of $472 in disability benefits -- a yearly income of approximately $5,664. Her monthly expenses, including the extremely low house payment, exceed her monthly income by $144. In the division of property below, she received $2,659.15 in cash. These figures leave no doubt that the wife met the economic inequality requirement on which any alimony award must be predicated. Tenn. Code Ann. § 36-5-101(d)(1). Nor can we dispute the wife's obvious need for additional income. *See Loyd v. Loyd*, 860 S.W.2d 409, 412 (Tenn. App. 1993).

The trial court made no finding of fact regarding the wife's employability or possibility of rehabilitation. In making the rehabilitative alimony award, the court stated that the $300 per month for two years was to

---

[2] Fault is a factor to be considered in the award of alimony, and the trial court herein found that the husband had committed inappropriate marital conduct by virtue of an improper relationship with another woman.

"give her a chance to go to maybe Motlow or something to get some further training. She has a high school education according to the statistical data. She's going to have to be able to qualify for something." While we can find implicit in that statement the trial court's conclusion that rehabilitation is possible, the trial court made no findings of fact in support of that conclusion. Additionally, the record includes no information regarding training or education which could enable the wife to work full-time, no information about her employability in view of her limitations, and no information concerning the income she could produce if employed part-time or full-time.

The appellate record is sufficiently developed to permit us to find that wife's ability to materially improve her health or increase her income is limited, leading us to conclude that rehabilitation is not feasible. Tenn. Code Ann. § 36-5-101(d)(2). Accordingly, we find the evidence preponderates against the decision to award the wife rehabilitative alimony for two years. Having determined that the wife is at an economic disadvantage in relation to the husband and that rehabilitation is not feasible, and having considered the above-mentioned statutory factors, especially the wife's need, the husband's ability to pay, the duration of the marriage, and the relative earning capacity, in conjunction with the others enumerated in Tenn. Code Ann. § 36-5-101(d), we award the wife periodic alimony in the amount of $300 per month for two years following the date of divorce, and in the amount of $200 per month thereafter, until her death or remarriage.

IV.

The wife contends that the trial court erred in its division of the marital property. She maintains that it failed to consider the marriage's length, her

disabilities, age, education, and contribution to the marriage, the disparities in earning capacity between the parties, and her inability to maintain herself on her current income. The husband responds that the equal division of the parties' assets was equitable, reflecting his equal, if not primary, contribution to the marriage.

Tennessee law requires that marital property be divided equitably without regard to fault. Tenn. Code Ann. § 36-4-121(a). But an equitable division is not necessarily an equal one. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. App. 1991). Tennessee Code Annotated § 36-4-121(c) sets forth the guiding factors to be considered in dividing marital property. These include, *inter alia,* the duration of the marriage, the parties' age, physical and mental health, vocational skills, employability, earning capacity, financial needs, and relative contribution to the marital estates. In making an equitable division, the court should also consider the economic circumstances of each party at the time the division of property is to become effective and the relative ability of each for future acquisitions of capital assets and income. In addition, as discussed above, one party's dissipation of assets can be considered in formulating a property division that is equitable. Tenn. Code Ann. § 36-4-121(c). A trial court's decision on the division of marital property warrants deference unless it is inconsistent with these factors or unsupported by a preponderance of the evidence. *See Barnhill*, 826 S.W.2d at 449-450.

Here, the trial court divided the major assets of the parties equally. We are not convinced that an equal division was equitable in this situation, however, considering that this was a twenty-eight year marriage, the husband has a significantly greater earning capacity, and the wife's income is limited by her

health problems. The wife's economic situation at the time of divorce is worse than the husband's.

As explained above, the wife will be able to meet her minimal living expenses with the award of alimony only as long as she is able to remain in the marital residence with its low mortgage payment or can find another place to live at a similar low monthly cost. The only evidence in the record is that no such other accommodation can be found. Thus, the trial court's decision to have the marital residence sold greatly reduces the likelihood that the wife can subsist on her monthly income.

The wife has asked that she be awarded the marital home. While we find that request reasonable in light of the wife's financial situation and the very low mortgage payments, we are unable to make such an award on the basis of the record before us. Such an award could render the distribution to the husband inequitable without modification of the distribution of the other major assets: the separate lot and the husband's retirement fund. We know nothing about the value of the retirement account, the amount of monthly benefits which will become available or when such benefits will become available. This prevents us from equitably modifying the distribution of the other assets in order to award the marital residence to the wife.

Because, however, we think it would be equitable and reasonable for the wife to retain the residence, if the other major assets can be distributed equitably, we remand this case to the trial court to hear evidence regarding the present value of the retirement accounts in order to reconsider distribution of the marital property in an equitable manner which will allow the wife to retain the marital residence.

While we regret the delay and additional expense involved in this remand, we are simply unable to equitably divide the marital estate when we do not know the value of one of the major assets. On remand, we are certain the trial court will encourage the least expensive method for obtaining and introducing the additional fact needed for its reconsideration.

In this reconsideration, the trial court should also consider the husband's dissipation of $20,000 in the six months prior to his filing for divorce. While the trial court stated that both parties had dissipated money throughout the marriage, we think the pre-filing reduction in husband's account is more relevant to a determination of the equities involved in the distribution of property than wife's spending of her earlier settlement monies. Even if the trial court determines that it should also consider the wife's $6000 in back pay she received in May 1997, which was spent during the parties' reconciliation, as an offsetting dissipation, the difference between the two amounts is considerable. In addition, the husband was unable to document that any of the $20,000 was spent to benefit the wife or the marriage, and was unable to fully explain where the money went. In view of these facts, and in view of the factors discussed above, we are of the opinion that an equitable distribution of the marital property would result in the wife receiving a greater than fifty percent share of the major assets.

VI.

The wife contends that the trial court erred in limiting her award of attorney fees to $1,200 when her actual fees and expenses were $3,345.88. The husband responds that the award must be presumed to be appropriate.

Trial courts have broad discretion in determining whether to require one spouse to pay for the other's legal expenses. *See Loyd v. Loyd*, 860 S.W.2d

at 413. We see no error in the trial court's decision.

## VII.

Accordingly, the trial court's decision to divide only the property the parties possessed at the time of separation is affirmed. That portion of the judgment dividing the marital property is affirmed except for the portion dealing with the residence, the separate lot, and the husband's retirement accounts. The order to sell the residence and the lot and equally divide the proceeds, as well as the distribution of the retirement funds is vacated, and the case is remanded for further fact finding regarding the present value of the retirement accounts and for consideration of an equitable distribution which will not require sale of the marital residence and will result in a more equitable distribution in accordance with this opinion. The trial court's decision on the alimony award is affirmed as modified. The award of attorney fees is affirmed. This case is remanded to the trial court for proceedings consistent with this opinion and such further proceedings as may be necessary. Costs of this appeal are to be shared equally between the parties.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WILLIAM B. CAIN, JUDGE